1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

SAN JOAQUIN DEPUTY SHERIFFS'
10 ASSOCIATION; KIM POEUN,

11                              NO. CIV. S-12-1361 LKK/GGH
          Plaintiffs,
12
       v.
13                                        O R D E R
COUNTY OF SAN JOAQUIN;
14 SAN JOAQUIN COUNTY SHERIFF'S
OFFICE; STEVE MOORE, Sheriff,
15 in his official and individual
capacities; and DOES 1 through
16 100, inclusive,

17

          Defendants.
18 _____/

19      This case arises from a confrontation between Plaintiff Deputy

20 Sheriff Kim Poeun and Defendant Sheriff Steve Moore that occurred

21 on September 30, 2011, in the parking lot of the San Joaquin County

22 Sheriff's Office.  Plaintiffs bring this case pursuant to 42 U.S.C.

23 § 1983, the Constitution for the State of California, California

24 Government Code §§ 3303 and 3500, and tort law theories.[1]

25 _____

26      [1] While the plethora of legal criteria does significantly add
to the court's work, it does little to add to the significance  of

                               1

1    Pending before the court is Defendants' motion to dismiss, ECF

2 No. 9, which Plaintiffs oppose, ECF No. 15.   For the reasons

3 provided herein, the court GRANTS, in part, and DENIES, in part,

4 Defendants' motion.[2]

5                              **I. BACKGROUND**

6 **A. Factual Background**[3]

7    Beginning in 2006, Plaintiff Deputy Sheriff Kim Poeun

8 ("Poeun") was assigned to a position in the Patrol Division.   At

9 the time of the incident alleged herein, Poeun was assigned to

10 transportation.

11    On or about September 30, 2011, at around 6:00 A.M., Poeun

12 arrived in his personal vehicle for work at the San Joaquin County

13 Sheriff's Office.   As Poeun arrived, Defendant Sheriff Steve Moore

14 ("Moore") stopped his own vehicle behind Poeun.   Moore ordered

15 Poeun to approach him, and Poeun complied.

16    Moore then ordered Poeun to produce his driver's license and

17 told him that he would be cited for speeding.   Poeun responded that

18 he did not have his driver's license.   Moore ordered Poeun to

19 surrender his car keys and to report to Moore's office at 9:00 A.M.

20 _____

21 the case, or for that matter, aid in analysis of the remarkable
   asserted facts.   At most, addressing those issues demonstrates the
22 court's devotion to our precious liberties.

23    [2] The fact that some of the causes of action lie, hardly
   answers the question of whether this suit should have been brought.

24    [3] These facts are taken from the allegations in the
   Plaintiffs' First Amended Complaint, ECF No. 5, at 4, unless
25 otherwise noted.   The allegations are taken as true for purposes
   of this motion only.   <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127
26 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

1   the same day.

2        Poeun reported to Moore's office as ordered.  At that time,

3   Moore told Poeun that he had observed Poeun speeding as well as

4   running a stop sign.  Moore "interrogated Poeun about those alleged

5   incidents but did not advise Poeun he was under investigation," or

6   "advise him of his rights."

7        Before questioning Poeun about his alleged violations of the

8   California Vehicle Code, Moore also "did not advise Poeun of his

9   rights pursuant to the Fifth and Fourteenth Amendments to the U.S.

10  Constitution and the decision in <u>Miranda v. Arizona</u>, 384 U.S. 436

11  (1966)."

12       Moore ordered Poeun to issue himself a traffic citation

13  admitting to violations of the California Vehicle Code.  Poeun

14  complied by issuing himself a citation for violations of California

15  Vehicle Code sections 22450(a), failure to stop at a stop sign;

16  22350, basic speed law; and 12951(a), driver's license not in

17  possession, with a date to appear in San Joaquin County Superior

18  Court.

19       Moore returned Poeun's car keys to him during the 9:00 A.M.

20  meeting, thus depriving Poeun of his keys for approximately three

21  hours.

22       As ordered, Poeun provided the citation to the Sheriff's

23  Office the same day.

24       Plaintiffs assert that Defendants violated Poeun's rights

25  under the Fourth Amendment, the Fifth Amendment, the Fourteenth

26  Amendment (under both substantive and procedural due process

1  theories), the Constitution of the State of California, and

2  California Government Code §§ 3303(b), 3303(c), 3303(g), 3303(i),

3  and 3500, et seq.  Pls' Mot., ECF No. 5, at 5-12.  Plaintiffs

4  further assert claims for intentional and negligent infliction of

5  emotional distress.  Id. at 13-14.  Plaintiffs seek actual damages,

6  injunctive and declaratory relief, civil penalties, attorneys fees

7  and costs, and "constitutional tort damages."  Id. at 13-15.

8  **B. Defendants' Motion to Dismiss**

9      On July 3, 2012, Defendants filed the motion to dismiss

10 presently before the court, see Defs' Mot., ECF No. 9, which

11 Plaintiffs oppose, Pls' Opp'n, ECF No. 15.

12              **II. STANDARD FOR A MOTION TO DISMISS**

13     A Federal Rule of Civil Procedure 12(b)(6) motion challenges

14 a complaint's compliance with the pleading requirements provided

15 by the Federal Rules.  Under Federal Rule of Civil Procedure

16 8(a)(2), a pleading must contain a "short and plain statement of

17 the claim showing that the pleader is entitled to relief."  The

18 complaint must give defendant "fair notice of what the claim is and

19 the grounds upon which it rests." Bell Atlantic v. Twombly, 550

20 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal

21 quotation and modification omitted).

22     To meet this requirement, the complaint must be supported by

23 factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct.

24 1937, 1950, 173 L.Ed.2d 868 (2009).  "While legal conclusions can

25 provide the framework of a complaint," neither legal conclusions

26 nor conclusory statements are themselves sufficient, and such

                                    4

1   statements are not entitled to a presumption of truth.   Id. at

2   1949-50.   Iqbal and Twombly therefore prescribe a two step process

3   for evaluation of motions to dismiss.   The court first identifies

4   the non-conclusory factual allegations, and the court then

5   determines whether these allegations, taken as true and construed

6   in the light most favorable to the plaintiff, "plausibly give rise

7   to an entitlement to relief."   Id.; Erickson v. Pardus, 551 U.S.

8   89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[4]

9       "Plausibility," as it is used in Twombly and Iqbal, does not

10  refer to the likelihood that a pleader will succeed in proving the

11  allegations.   Instead, it refers to whether the non-conclusory

12  factual allegations, when assumed to be true, "allow[] the court

13  to draw the reasonable inference that the defendant is liable for

14  the misconduct alleged."   Iqbal, 129 S.Ct. at 1949.   "The

15  plausibility standard is not akin to a 'probability requirement,'

16  but it asks for more than a sheer possibility that a defendant has

17  acted unlawfully."   Id. (quoting Twombly, 550 U.S. at 557).   A

18  complaint may fail to show a right to relief either by lacking a

19  cognizable legal theory or by lacking sufficient facts alleged

20  under a cognizable legal theory. Balistreri v. Pacifica Police

21  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

22  _____

23      [4] The court also may consider certain limited evidence on a
    motion to dismiss.  As an exception to the general rule that non-
24  conclusory factual allegations must be accepted as true on a motion
    to dismiss, the court need not accept allegations as true when they
25  are contradicted by this evidence.  See Mullis v. United States
    Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); Durning v. First
26  Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

### III. ANALYSIS

**A. The San Joaquin County Sheriff's Office as Defendant**

Defendants argue that the San Joaquin County Sheriff's Office should be dismissed as a defendant because it is a subdivision of the County of San Joaquin ("County") and "suing both the San Joaquin County Sheriff's Office and County is redundant." Defs' Mot., ECF No. 9, Att. 1, at 12.[5]

A number of Plaintiffs' claims for relief are brought under the California Public Safety Officers Procedural Bill of Rights Act ("POBRA"). Cal. Govt. Code §§ 3300, et seq. Section 3309.5(a) of POBRA provides, "It shall be unlawful for any *public safety department* to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter." Cal. Govt. Code § 3309.5(a) (emphasis added). Because the statute explicitly provides that public safety departments are liable for violations of POBRA, and the court assumes that the San Joaquin County Sheriff's Office is a public safety department, the San Joaquin County Sheriff's Office is properly named as a defendant in this action.

Defendants' motion to dismiss the San Joaquin County Sheriff's Office as a named defendant therefore fails.

**B. Moore's Entitlement to Qualified Immunity**

Defendants argue that Moore is entitled to qualified immunity on all of Poeun's 42 U.S.C. § 1983 claims and should be dismissed

---

[5] Page numbers cited herein refer to the court's electronic pagination system.

1   as an individual defendant.  Defs' Mot., ECF No. 9, Att. 1, at 12-
2   14.

3       The doctrine of qualified immunity "protects government
4   officials from 'liability for civil damages insofar as their
5   conduct does not violate clearly established statutory or
6   constitutional rights of which a reasonable person would have
7   known.'"  Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009)
8   (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,
9   73 L.Ed.2d 396 (1982)).  In Saucier v. Katz, 533 U.S. 194, 121
10  S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established
11  a two-pronged inquiry for determining whether qualified immunity
12  applies in a given situation: (1) whether the facts that a
13  plaintiff has alleged or shown make out a violation of a
14  constitutional right; and (2) whether the right at issue was
15  "clearly established" at the time of the defendant's alleged
16  misconduct.  Id. at 201 (citations omitted).[6]

17      Qualified immunity is applicable unless the official's conduct
18  violated a clearly established constitutional right.  Pearson v.
19  Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
20  A right is clearly established only if "it would be clear to a
21  reasonable officer that his conduct was unlawful in the situation
22  he confronted."  Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct.

23  ───────────────
24      [6] The court in Saucier established these considerations as a
    strict two-step process through which lower courts should move
25  sequentially.  533 U.S. at 200-01.  In Pearson v. Callahan, 555
    U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), however, the
26  Court held that lower courts have discretion to decide which of the
    two prongs to consider first.

1   2151, 150 L.Ed.2d 272 (2001).

2       If the court determines, however, that no constitutional

3   violation occurred, the qualified immunity inquiry is at an end.

4   Aquilera v. Baca, 510 F.3d 1161, 1167 (9th Cir. 2007).  The court

5   addresses whether the facts as alleged make out a violation of a

6   constitutional right in the following sections of this order, and

7   when necessary, analyzes Moore's entitlement to qualified immunity.

8   **C. Fourth Amendment Claim**

9       Defendants argue that Poeun's Fourth Amendment claim fails

10  because Moore had probable cause to stop Poeun for multiple

11  violations of the vehicle code and because Moore's retention of

12  Poeun's car keys was not so unreasonable as to constitute an

13  illegal seizure.  Defs' Mot., ECF No. 9, Att. 1, at 14-15.

14      At issue is whether the following incidents, as alleged,

15  violated Poeun's Fourth Amendment right to be free of unreasonable

16  searches and seizures: (1) Moore's stop of Poeun; and (2) Moore's

17  deprivation of Poeun's car keys.

18      **i. Moore's Stop of Poeun**

19      The Ninth Circuit has provided that, while "policemen, like

20  teachers and lawyers, are not relegated to a watered-down version

21  of constitutional rights," Garrity v. State of N.J., 385 U.S. 493,

22  500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Constitution does not

23  afford public employees greater workplace rights than those enjoyed

24  by their private sector counterparts.  Aquilera, 510 F.3d at 1167

25  (9th Cir. 2007).  A law enforcement agency has the authority as an

26  employer to direct its officers to remain on duty and to answer

1  questions from supervisory officers as part of a criminal
2  investigation into the subordinates' alleged misconduct. Id. at
3  1168 (citing Driebel v. City of Milwaukee, 298 F.3d 622, 638 (7th
4  Cir. 2002); United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir.
5  2000); United States v. Baird, 851 F.2d 376, 380-82 (D.C. Cir.
6  1988)). Moreover, a superior law enforcement officer may briefly
7  stop and question a subordinate officer, as any police officer may
8  do when he has a reasonable suspicion that criminal activity may
9  be afoot. Aquilera, 510 F.3d at 1169, n.4 (citing Terry v. Ohio,
10 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

11     An investigatory stop (temporary detention) may be conducted
12 without violating the Fourth Amendment's ban on unreasonable
13 searches and seizures if the investigatory stop is otherwise
14 lawful. Arizona v. Johnson, 555 U.S. 323, 326, 129 S.Ct. 781, 784,
15 172 L.Ed.2d 694 (2009) (discussing Terry v. Ohio, 392 U.S. 1, 88
16 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In a traffic-stop setting, an
17 investigatory stop is lawful "whenever it is lawful for police to
18 detain an automobile and its occupants pending inquiry into a
19 vehicular violation." Id. at 327.

20     To initiate an investigatory stop of a motorist, there must
21 "at least exist reasonable suspicion that the motorist is engaging
22 in illegal activity." Liberal v. Estrada, 632 F.3d 1064, 1077 (9th
23 Cir. 2011). To form a reasonable suspicion, an officer must have
24 "specific, articulable facts which, together with objective and
25 reasonable inferences, form the basis for suspecting that the
26 particular person detained engaged in criminal activity." Id.

1  (citing <u>United States v. Lopez-Soto</u>, 205 F.3d 1101, 1105 (9th Cir.

2  2000)).

3      "As a general matter, the decision to stop an automobile is

4  reasonable where the police have probable cause to believe that a

5  traffic violation has occurred." <u>Whren v. United States</u>, 517 U.S.

6  806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

7      The first issue here presented is whether Poeun, a deputy

8  sheriff, was seized without the existence of probable cause.[7]

9  _____

        [7] In <u>Aquilera v. Baca</u>, the Ninth Circuit expounded on the
10  "seizure" portion, as opposed to the "probable cause" portion, of
   this inquiry. As to the question of whether a subordinate officer
11  was seized, the Ninth Circuit provided, "Since the Fourth Amendment
   does not protect against the threat of demotions or job loss, the
12  relevant constitutional inquiry is whether a reasonable deputy in
   the position of the plaintiff[] would have feared detention if he
13  had refused to obey the commands of his superior officers."
   <u>Aquilera</u>, 510 F.3d at 1161 (citing <u>United States v. Anderson</u>, 663
14  F.2d 934, 939 (9th Cir. 1981)). In this inquiry, the court must
   "distinguish between a department's actions in its capacity as an
15  employer and its actions as the law enforcement arm of the state."
   <u>Id.</u> (citing <u>Gardner v. Broderick</u>, 392 U.S. 273, 88 S.Ct. 1913, 20
16  L.Ed.2d 1082 (1968); <u>Garrity</u>, 385 U.S. at 493, 87 S.Ct. 616).
        When considering whether subordinate officers were seized
17  without the existence of probable cause, this circuit considers the
   experience level of the subordinate officer; whether the treatment
18  was consistent with that allowed by department guidelines or
   general policy; the occurrence of physical contact or threats of
19  physical restraint; explicit refusal of permission to depart;
   isolation of the subordinate officer; permission to use the
20  restroom without accompaniment; the subordinate officer's being
   informed that he was the subject of a criminal investigation;
21  whether the subordinate officer was spoken to in a menacing or
   threatening manner; whether the subordinate officer was under
22  constant surveillance; whether superior officers denied a request
   to contact an attorney or union representative; the subordinate
23  officer's ability to retain law enforcement equipment, including
   weapons and badges; the duration of detention; and the subordinate
24  officer's receipt of overtime pay. <u>Aquilera</u>, 510 F.3d at 1169
   (citing <u>Driebel</u>, 298 F.3d at 622-49).
25      In this case, Defendants do not dispute that a seizure
   occurred, but instead, argue that the facts alleged in Plaintiffs'
26  complaint show that Moore had probable cause to stop Poeun.

1    The facts as alleged establish that Moore "told [Poeun] that he
2    would be cited for speeding," that "Moore advised Poeun he had
3    observed him speeding as well as running a stop sign," and that
4    "Moore ordered Poeun to issue himself a traffic citation admitting
5    to violations of the California Vehicle Code."

6        Speeding and running a stop sign are vehicular violations
7    which would have given Moore probable cause to stop Poen.  While
8    the facts do not allege that Poeun had been speeding and ran a stop
9    sign, the facts also do not allege that Poeun had *not* been speeding
10   and had *not* run a stop sign, or even that Moore lacked a basis for
11   believing that Poeun had been speeding and had run a stop sign.
12   Because Plaintiff's complaint does not address whether Moore had
13   probable cause to stop Poeun, and Plaintiffs must make at least
14   some factual allegations that Moore lacked probable cause in order
15   to properly claim that the seizure was unreasonable under the
16   Fourth Amendment, the court finds that Plaintiffs' complaint lacks
17   sufficient facts to make out a Fourth Amendment claim based on
18   Moore's stop of Poeun.  Defendants' motion to dismiss Plaintiffs'
19   Fourth Amendment claim is therefore granted as to Moore's stop of
20   Poeun, with leave to amend.

21       **ii. Moore's Deprivation of Poeun's Car Keys**

22       A seizure within the meaning of the Fourth Amendment results
23   if "there is some meaningful interference with an individual's
24   possessory interests in that property."  <u>Miranda v. City of</u>
25   <u>Cornelius</u>, 429 F.3d 858, 862 (9th Cir. 2005) (citing <u>Soldal v. Cook</u>
26   <u>County</u>, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)).

1   The Fourth Amendment protects against unreasonable interferences
2   in property interests regardless of whether there is an invasion
3   of privacy.  Id. (citing Soldal, 506 U.S. at 62-64).

4       "A seizure conducted without a warrant is per se unreasonable
5   under the Fourth Amendment--subject only to a few specifically
6   established and well delineated exceptions.  The burden is on the
7   Government to persuade the district court that a seizure comes
8   under one of a few specifically established exceptions to the
9   warrant requirement." United States v. Hawkins, 249 F.3d 867, 872
10  (9th Cir. 2001) (citing Minnesota v. Dickerson, 508 U.S. 366, 372,
11  113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); United States v. Huquez-
12  Ibarra, 954 F.2d 546, 551 (9th Cir. 1992)).

13      Defendants argue that, "It is not unreasonable for Moore to
14  retain Poeun's car keys during the three-hour time period because
15  Poeun did not have his driver's license and could not verify his
16  identity."  Defs' Mot., ECF No. 9, Att. 1, at 15.  The court
17  interprets Defendants' statement as an argument that Moore's
18  seizure of Poeun's car keys falls within the "community caretaking"
19  exception to the warrant requirement.

20      An impoundment may be proper under the community caretaking
21  doctrine if the driver's violation of a vehicle regulation prevents
22  the driver from lawfully operating the vehicle.  Miranda, 429 F.3d
23  at 865 (citing United States v. Gutierrez, 995 F.2d 169, 171 (9th
24  Cir. 1993)).  The violation of a traffic regulation justifies
25  impoundment of a vehicle if the driver is unable to remove the
26  vehicle from a public location without continuing its illegal

12

1  operation.  Id.  The decision to impound a vehicle after the driver

2  has violated a vehicle regulation must consider the location of the

3  vehicle, and whether the vehicle was actually "impeding traffic or

4  threatening public safety and convenience" on the streets, such

5  that impoundment was warranted.  Id. (citing South Dakota v.

6  Opperman, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000, n.5

7  (1976)).  An officer cannot reasonably order an impoundment in

8  situations where the location of the vehicle does not create any

9  need for the police to protect the vehicle or to avoid a hazard to

10  other drivers.  Id. at 866 (citing United States v. Squires, 456

11  F.2d 967, 970 (2d Cir. 1972)).

12      A construction of Plaintiffs' allegations in the light most

13  favorable to Poeun is that Poeun's vehicle was parked outside, and

14  in the vicinity of, the San Joaquin County Sheriff's Department.

15  See Pls' First Am. Compl., ECF No. 5, at 4 ("Poeun arrived in his

16  personal vehicle for work at the Department.").  The facts as

17  alleged establish that Moore impounded Poeun's vehicle through his

18  deprivation of Poeun's car keys.  The facts also indicate that

19  Poeun did not have a drivers' license, and it would be unlawful to

20  operate his car without one.

21      Nonetheless, any argument that Moore could make justifying his

22  impoundment of Poeun's vehicle under the "community caretaking"

23  doctrine is undercut by the fact that Moore returned Poeun's keys

24  after three hours.  That is, if Poeun's control of the vehicle

25  presented no threat to public safety at 9:00 A.M., when Moore

26  returned his keys, it is likely that he concluded that Poeun's

1  control of the vehicle presented no threat to public safety three
2  hours earlier, when Moore had taken the keys in the first instance.
3  How he arrived at that conclusion in light of the absence of a
4  license, is, like much of this case (on both sides), difficult to
5  understand.     Nonetheless,  the  allegations  make  out  a  Fourth
6  Amendment  violation.     The  right  to  be  free  from  unreasonable
7  interferences    in    property    was    longstanding    and    "clearly
8  established" at the time of the incident alleged. Thus, Moore is
9  not entitled to qualified immunity for this aspect of Plaintiffs'
10 Fourth Amendment claim.

11 **D. Fifth Amendment Claim**

12        Defendants argue that Poeun's Fifth Amendment claim fails
13 because  there  was  no  criminal  charge  or  criminal  proceeding
14 initiated against Poeun and because Moore was not required to
15 advise Poeun of his <u>Miranda</u> rights.   Defs' Mot., ECF No. 9, Att.
16 1, at 16-19.   At oral argument, Plaintiffs' counsel conceded that
17 Plaintiffs' factual allegations do not make out a Fifth Amendment
18 claim.   Plaintiffs' Fifth Amendment claim is therefore dismissed
19 without leave to amend.

20 **E. Fourteenth Amendment Substantive Due Process Claim**

21        Defendants argue that Poeun's Fourteenth Amendment substantive
22 due process claim fails because the Fourth Amendment reasonableness
23 standard,  instead  of  the  Fourteenth  Amendment  substantive  due
24 process standard, applies to the facts of this case and, even if
25 the substantive due process standard were to apply, Moore's actions
26 were  not  sufficiently  "conscience-shocking"  to  have  violated

1  Poeun's substantive due process rights.   Defs' Mot., ECF No. 9,

2  Att. 1, at 19-21.

3      Where a particular Amendment provides an explicit textual

4  source of constitutional protection against a particular sort of

5  government behavior, that Amendment, not the more generalized

6  notion of substantive due process, must be the guide for analyzing

7  those claims.   County of Sacramento v. Lewis, 523 U.S. 833, 842,

8  118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).   Substantive due process

9  analysis is inappropriate in this case only if Plaintiffs' claim

10 is "covered by" the Fourth Amendment.   Id. at 843.

11     The incident alleged does not merely present the issue of the

12 reasonableness of a sheriff's stop and seizure of a civilian but,

13 instead, adds complexity to the issue by implicating potentially

14 unlawful administrative and employment consequences to Moore's

15 alleged stop and seizure.   These additional aspects of the facts

16 presented may well fall outside of the parameters of the Fourth

17 Amendment.   Plaintiffs' claim is therefore not wholly "covered by"

18 the Fourth Amendment and, thus, substantive due process analysis

19 is not inappropriate.

20     "The Supreme Court has described the 'fundamental' rights

21 protected by substantive due process as 'those personal activities

22 and decisions that this Court has identified as so deeply rooted

23 in our history and traditions, or so fundamental to our concept of

24 constitutionally ordered liberty, that they are protected by the

25 Fourteenth Amendment.'   Those rights are few, and include the right

26 to marry, to have children, to direct the education and upbringing

of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." <u>Juvenile Male</u>, 670 F.3d at 1012 (citations omitted).  The facts here presented do not implicate a violation of any of the fundamental rights identified by the Supreme Court. Moore's action therefore need only bear a reasonable relation to a legitimate state interest to be justified when viewed through the lens of substantive due process.

In analyzing abusive executive action, the Supreme Court has provided that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  <u>County of Sacramento</u>, 523 U.S. at 846 (internal citations omitted).  The cognizable level of executive abuse of power in a substantive due process analysis is that which "shocks the conscience" and "violates the decencies of civilized conduct."  <u>Id.</u> at 846-47.

The court determines that, even when construing the allegations in the light most favorable to Plaintiff, Moore's actions neither "shock the conscience," nor do they "violate[] the decencies of civilized conduct."  Plaintiffs therefore fail to establish a substantive due process violation.  Defendants' motion to dismiss Plaintiff's Fourteenth Amendment substantive due process claim is granted, with leave to amend.

**F. Fourteenth Amendment Procedural Due Process Claim**

To succeed on a procedural due process claim, a plaintiff must demonstrate that: (1) he had a constitutionally protected liberty or property interest; (2) the deprivation of that interest by the

1  government; and (3) a lack of adequate process. <u>Portman v. County</u>

2  <u>of Santa Clara</u>, 995 F.2d 898, 904 (9th Cir. 1993).

3      Plaintiffs assert that "[t]he procedural due process rights

4  at issue here are those to which Poeun was entitled under the

5  Public Safety Officers Procedural Bill of Rights Act." Pls' Mot.,

6  ECF No. 15, at 8.

7      A state statute can give rise to federally protected due

8  process interests. <u>Groten v. California</u>, 251 F.3d 844, 850 (9th

9  Cir. 2001) (citing <u>Parks v. Watson</u>, 716 F.2d 646, 656-57 (9th Cir.

10 1983)).[8] State statutes providing for particular procedures may

11 create entitlements protected by due process. <u>Id.</u> While not every

12 procedural  statute  creates  entitlements,  if  the  procedural

13 requirements were intended to operate as a "significant substantive

14 restriction" on the agency's actions, a property interest may be

15 created. <u>Id.</u>

16     In <u>Skelly v. State Personnel Bd.</u>, the California Supreme Court

17 provided that "the California statutory scheme regulating civil

18 service employment confers upon an individual who achieves the

19 status  of  'permanent  employee'  a  property  interest  in  the

20 continuation of his employment which is protected by due process."

21 15 Cal.3d 194, 206, 539 P.2d 774, 783, 124 Cal.Rptr. 14 (Cal.

22 1975).  The  property  interest  that  California  public  safety

23 officers have in their continued employment is derived from POBRA's

24 ─────────────────

25     [8]  Plaintiffs improperly cite  <u>Groten</u>'s 3-part test for
   determining  whether  a  *federal*,  as  opposed  to  a  state,  statute
   creates  a  right  enforceable  under  section  1983.  The  proper
26 question,  however,  is  whether  POBRA  creates  a  property  interest.

Section 3304(b), which applies after a police officer completes his or her probationary period of employment and requires an administrative appeal before a police officer may suffer a "punitive" action. Cal. Govt. Code § 3304(b); see also Jordan v. Kirkman, No. 07-cv-6575, 2008 WL 4601297, at *2, n.4 (C.D.Cal. Oct. 15, 2008) (citing Fleisher v. Signal Hill, 829 F.2d 1491, 1494-95 (9th Cir. 1987)).

Here, Plaintiffs' facts allege that Poeun had been a employee of the Sheriff's Office since 2006--around 5 years before the alleged incident occurred. While the facts do not explicitly state whether Poeun had attained permanent status in the Sheriff's Office, the court can reasonably infer that Poeun was considered a "permanent employee." Therefore, Poeun had a property interest in his continued employment which is protected by due process.

There are no facts alleged, however, from which the court can reasonably infer that Poeun was in any way deprived of his property interest in continued employment at the Sheriff's Office. Plaintiffs therefore fail to allege sufficient facts to establish a violation of Poeun's procedural due process rights. Defendants' motion to dismiss Plaintiffs' procedural due process claim is granted, with leave to amend.

**G. California Constitution Claim**

Citing Katzberg v. Regents of Univ. of Cal., 29 Cal.4th 300 (Cal. 2002), Defendants argue that Plaintiffs are foreclosed, as a matter of law, from seeking tort damages for an alleged violation ////

1   Article 1, § 7 of the California Constitution.[9]

2       The Court's determination in Katzberg, however, was limited

3   to the narrow issue of whether money damages are available in

4   response to a claim for violation of the due process *liberty*

5   interest; it did not address the issue of whether money damages are

6   permissible remedies for violation of the due process *property*

7   interest.  Walls v. Central Contra Costa Transit Auth., No. 08-cv-

8   224, 2012 WL 581362, at *3 (N.D. Cal. Feb. 22, 2012) (citing

9   Katzberg, 29 Cal.4th at 307, 127 Cal.Rptr.2d 482, 58 P.3d 339).

10      Even as to the question of whether money damages are available

11  for a violation of the due process liberty interest, the Court in

12  Katzberg found that "courts, exercising their authority over the

13  common law, may, in appropriate circumstances, recognize a tort

14  action for damages to remedy a constitutional violation."

15  Katzberg, 29 Cal.4th at 325.  The Court further suggested, however,

16  that the availability of "adequate alternative remedies" in a given

17  circumstance "militates against judicial creation of a tort cause

18  of action for damages."  Id. at 327.

19      Plaintiffs do not address Defendants' argument as to

20  Plaintiffs' California Constitution claim in their opposition to

21  Defendants' motion to dismiss.

22  _____

23      [9] The California Constitution, Cal. Const., art. I, § 7,
    prohibits the government from depriving a person of property

24  without due process of law.  Hanford Executive Management Employee
    Ass'n v. City of Hanford, No. 11-cv-828, 2011 WL 5825691 at *12

25  (E.D.Cal. Nov. 17, 2011).  The procedural due process clause of the
    California Constitution exists "to provide affected parties with

26  the right to be heard at a meaningful time and in a meaningful
    manner."  Id.

1     As a matter of common sense, as well as common law, a
2  deprivation of property is a less egregious loss than a loss of
3  liberty.    Given the court's holding in <u>Katzberg</u>, the court
4  concludes that plaintiff has no claims under the California
5  Constitution for money damages.

6  **H. Cal. Govt. Code § 3303 Claims**

7     The Public Safety Officers Procedural Bill of Rights Act
8  ("POBRA") is located at California Government Code §§ 3300, et
9  seq., and sets forth a list of basic rights and protections which
10 must be afforded to all peace officers by the agencies that employ
11 them.   <u>Baggett v. Gates</u>, 32 Cal.3d 128, 135 (Cal. 1982).   The
12 various procedural protections of POBRA "balance the public
13 interest in maintaining the efficiency and integrity of the police
14 force with the police officer's interest in receiving fair
15 treatment." <u>Jackson v. City of Los Angeles</u>, 111 Cal.App. 4th 899,
16 909 (Cal. 2003).

17    Section 3303 of POBRA provides: "When any public safety
18 officer is under investigation and subjected to interrogation by
19 his or her commanding officer . . . that could lead to punitive
20 action, the interrogation shall be conducted under the following
21 conditions. . . ." Cal. Govt. Code § 3303.  "Punitive action" is
22 defined in section 3303 as "any action that *may* lead to dismissal,
23 demotion, suspension, reduction in salary, written reprimand, or
24 transfer for purposes of punishment." <u>Id.</u> (emphasis added).

25    California courts interpreting the "punitive action"
26 definition of section 3303 have determined that POBRA "does not

require a showing that an adverse employment consequence has
occurred or is likely to occur." Paterson v. City of Los Angeles,
174 Cal.App.4th 1393, 1400, 95 Cal.Rptr.3d 333, 338-39 (Cal.App.
2 Dist., 2009) (citing Otto v. Los Angeles Unified School Dist.,
89 Cal.App.4th 985, 997, 107 Cal.Rptr.2d 664 (Cal.Ct.App. 2001)).
Rather, "punitive action . . . may exist when action is taken which
may lead to the adverse consequences . . . at some future time."
Id. (citing Otto, 89 Cal.App.4th at 996, 107 Cal.Rptr.2d 664).
However, section 3303 also provides: "This section shall not apply
to any interrogation of a public safety officer in the normal
course of duty, counseling, instruction, or informal verbal
admonishment by, or other routine or unplanned contact with, a
supervisor or any other public safety officer, *nor shall this
section apply to an investigation concerned solely and directly
with alleged criminal activities*." Cal. Govt. Code § 3303(i)
(emphasis added).

Plaintiffs' do not present any facts to indicate that Moore's
questioning of Poeun concerned anything other than alleged
vehicular violations. Because any discussion between Moore and
Poeun appears to be "concerned solely and directly with alleged
criminal activities," such discussion falls within section 3303(i)
and Plaintiffs' § 3303 claims are foreclosed. Defendants' motion
to dismiss Plaintiffs' § 3303 claims is granted, with leave to
amend.

**I. Cal. Govt. Code § 3500 Claim**

Under the Meyers-Milias-Brown Act ("MMBA"), Cal. Govt. Code

1  § 3500, et seq., a public agency is required to meet and confer in
2  good faith with the representatives of a recognized employee
3  organization (here, the San Joaquin Deputy Sheriffs' Association),
4  before determining a policy or course of action "regarding wages,
5  hours, and other terms and conditions of employment."  Cal. Govt.
6  Code § 3505.

7       Plaintiffs cite Redwoods Community College Dist. v. Public
8  Employment, 159 Cal.App.3d 617, 618, 205 Cal.Rptr. 523 (Cal.Ct.App.
9  1984), for the proposition that "Under federal and California labor
10 cases an individual employee has a right to be represented by his
11 or her union at certain kinds of interviews with management."  The
12 court notes that while "[n]o court appears to have set a firm outer
13 limit to this right of representation," "the facts that the
14 employee requested the representation, that the interview was
15 investigatory, and that the employee reasonably believed that the
16 interview might result in disciplinary action against him or her
17 . . . have been deemed significant."  Id. at 618-19.

18      Subsequent to the court's decision in Redwoods Community
19 College, the California Court of Appeal for the Fourth District
20 provided, in interpreting the MMBA, that "[a] public agency's
21 action must have a significant effect on wages, hours and other
22 terms and conditions of employment before it will be subject to the
23 provisions of the MMBA.  Riverside Sherriff's Ass'n v. County of
24 Riverside, 106 Cal.App.4th 1285, 1290, 131 Cal.Rptr.2d 454
25 (Cal.Ct.App. 2003) (emphasis added).

26      The court finds it not unreasonable to infer that Poeun

22

believed that the interview might result in disciplinary action. It is also reasonable to infer Moore's questioning of Peoun, both outside the Sheriff's Office, and later in Moore's office, was "investigatory" because any questioning concerned the alleged vehicular violations.

Nonetheless, Plaintiffs fail to allege any effect that Moore's actions had on Poeun's wages, hours, or other terms and conditions of employment.  Plaintiffs also fail to allege that Poeun requested representation.

The court concludes that Plaintiffs' Cal. Govt. Code § 3500 claim is insufficiently pled.

Defendants' motion to dismiss Plaintiff's § 3500 claim is granted, with leave to amend.

**J. Claim for Injunctive Relief**

Defendant argues that: (1) the San Joaquin County Deputy Sheriff's Association lacks standing to seek injunctive relief pursuant to California Government Code § 3309.5(d)(1);[10] and (2) injunctive relief is not appropriate.[11]

---

[10] An organization has representational standing if: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Associated General Contractors of America v. Metro. Water Dist., 159 F.3d 1178, 1181 (9th Cir. 1998).  Only where litigation would result in profound conflicts of interest is associational standing typically considered inappropriate.  Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856 (7th Cir. 1996).

[11] California allows a final injunction in the following circumstances: "(1) Where pecuniary compensation would not afford adequate relief; (2) Where it would be extremely difficult to

1    California Government Code § 3309.5, under which Plaintiffs'

2    seek injunctive relief, provides for injunctive relief to remedy

3    violations of the rights provided under POBRA.  <u>See</u> Cal. Govt. Code

4    § 3309.5.  Because the court has determined that, as pled, Poeun

5    fails to sufficiently establish claims under POBRA, the right to

6    seek injunctive relief under § 3309.5 is foreclosed to Plaintiff.

7        Defendants' motion to dismiss Plaintiffs' claim for injunctive

8    relief is granted with leave to amend.

9    **K. Intentional Infliction of Emotional Distress Claim**

10       To state a claim for intentional infliction of emotional

11   distress, a plaintiff must plead: (1) extreme and outrageous

12   conduct by the defendant with the intention of causing, or reckless

13   disregard of the probability of causing, emotional distress; (2)

14   that the plaintiff suffered severe or extreme emotional distress;

15   and (3) that the plaintiff's injuries were actually or proximately

16   caused by the defendant's outrageous conduct.  <u>Berkley v. Dowds</u>,

17   152 Cal.App.4th 518, 533, 61 Cal.Rptr.3d 304 (2007).  The conduct

18   must be so extreme as to "exceed all bounds of that usually

19   tolerated in a civilized community."  <u>Unterberger v. Red Bull N.</u>

20   <u>America, Inc.</u>, 162 Cal.App.4th 414, 423, 75 Cal.Rptr.3d 368 (2008)

21   _____

22   ascertain the amount of compensation which would afford adequate
     relief; (3) Where the restraint is necessary to prevent a
23   multiplicity of judicial proceedings; or (4) Where the obligation
     arises from a trust."  Cal. Civ. Code § 3422.
24       Additionally, as Defendants note, "[i]njunctive relief is a
     remedy and not, in itself, a cause of action, and a cause of action
25   must exist before injunctive relief may be granted."  <u>Camp v. Board</u>
     <u>of Supervisors</u>, 123 Cal.App.3d 334, 356, 176 Cal.Rptr. 620
26   (Cal.Ct.App. 1981).

1    (citations omitted).   The distress must be so severe that "no
2    reasonable [person] in a civilized society should be expected to
3    endure it." <u>Fletcher v. W. Nat'l Life Ins. Co.</u>, 10 Cal.App.3d 376,
4    397, 89 Cal.Rptr. 78 (1970).

5         Given the facts as pled, the court cannot reasonably conclude
6    that Moore acted in a way that was so extreme that it exceeded all
7    bounds of that usually tolerated in a civilized community.   Nor can
8    the court find that Poeun's resulting distress from the incident
9    was so severe that no reasonable person in a civilized society
10   should be expected to endure it.

11        Plaintiff's factual allegations are therefore insufficient to
12   establish a claim for intentional infliction of emotional distress.
13   Defendants' motion to dismiss said claim is granted.   Because of
14   the allegations made, it is clear to the court that leave to amend
15   need not be granted.

16   **L. Negligent Infliction of Emotional Distress Claim**

17        The negligent causing of emotional distress is not an
18   independent tort, but the tort of negligence; the traditional
19   elements of duty, breach of duty, causation, and damages apply.
20   <u>Burgess v. Superior Ct.</u>, 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615
21   (Cal. 1992).   To establish a claim for negligent infliction of
22   emotional distress under a "direct victim" theory, Poeun must be
23   alleged to have suffered "serious emotional distress." <u>See</u> <u>id.</u> at
24   1073.

25        Plaintiffs allege that Poeun suffered "severe emotional
26   distress" and "physical and emotional injuries, including general

physical upset and manifestations of severe emotional distress."
Pls' Am. Compl., ECF No. 5, at 14.    The court finds these
allegations conclusory and not entitled to a presumption of truth.
Because Plaintiffs have provided no further factual allegations to
support this claim, Plaintiffs' negligent infliction of emotional
distress claim is dismissed.   Again, given the allegations, leave
to amend will not be granted.

### IV. CONCLUSION

Accordingly, the court ORDERS that:

- Defendants' motion to dismiss the San Joaquin County Sheriff's Office as a named defendant is DENIED.

- Defendants' motion to dismiss Plaintiffs' Fourth Amendment claims is GRANTED, with leave to amend, as to Plaintiffs' allegations regarding Moore's stop of Poeun,[12] but DENIED as to Plaintiffs' allegations regarding Moore's deprivation of Poeun's car keys.

- Defendants' motion to dismiss Plaintiffs' Fifth Amendment claim is GRANTED, without leave to amend.

- Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment substantive and procedural due process claims is GRANTED, with leave to amend.

- Defendants' motion for qualified immunity as to Defendant Moore is GRANTED as to all of Plaintiffs'

---

[12] The fact that the court feels compelled to grant leave to amend various causes of action does not mean that the causes of action should be re-alleged.   The court can only hope that calmer heads will prevail.

1    constitutional claims as pled, except for Plaintiffs'

2    Fourth Amendment claim as to Moore's deprivation of

3    Poeun's car keys.  Consideration of qualified immunity

4    is deferred to further pleadings, if any.

5  •   Defendants' motion to dismiss is GRANTED as to

6    Plaintiffs' California Constitution claim, without leave

7    to amend.

8  •   Defendants' motion to dismiss is GRANTED as to

9    Plaintiffs' Cal. Govt. Code § 3303 claims, Plaintiffs'

10   Cal. Govt. Code § 3500 claim, and Plaintiffs' claim for

11   injunctive relief.  Plaintiff is granted leave to amend

12   each of these claims.

13  •   Defendants' motion to dismiss Plaintiffs' intentional

14   and negligent infliction of emotional distress claims is

15   GRANTED, without leave to amend.

16  •   Amendments to the complaint, if any, shall be filed

17   within thirty (30) days; oppositions are due fourteen

18   (14) days thereafter.

19   IT IS SO ORDERED.[13]

20   DATED:  September 24, 2012.

21

22   LAWRENCE K. KARLTON

23   SENIOR JUDGE
     UNITED STATES DISTRICT COURT

24

25   [13] Having done my duty in examining the allegations, the court
     cannot help but wonder whether there is some other motive which has
26   led the plaintiff to attempt to make a federal case out of the
     puerile facts.

27