UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAN JOAQUIN DEPUTY SHERIFFS'
ASSOCIATION; KIM POEUN,

                    NO. CIV. S-12-1361 LKK/GGH

       Plaintiffs,

   v.

                    O R D E R

COUNTY OF SAN JOAQUIN;
SAN JOAQUIN COUNTY SHERIFF'S
OFFICE; STEVE MOORE, Sheriff,
in his official and individual
capacities; and DOES 1 through
100, inclusive,

       Defendants.
_____/

     This case arises from a confrontation between Plaintiff Deputy

Sheriff Kim Poeun and Defendant Sheriff Steve Moore that occurred

in the parking lot of the San Joaquin County Sheriff's Office on

September 30, 2011.

     Pending before the court is Defendants' motion to dismiss the

action.  Defs' Mot., ECF No. 23.  For the reasons provided herein,

the court GRANTS Defendants' motion.

////

# I. BACKGROUND

## A. Factual Background[1]

Beginning in 2006, Poeun was assigned a position in the Patrol Division of the San Joaquin County Sheriff's Office.  At the time of the incident alleged herein, Poeun was assigned to transportation.

On or about September 30, 2011, at about 6:00 A.M., Plaintiff Kim Poeun ("Poeun") arrived in his personal vehicle for work at the San Joaquin County Sheriff's Office.  Poeun parked his car in a marked parking stall available to the general public.

As Poeun arrived, Defendant Steve Moore ("Moore"), the Sheriff of San Joaquin County, stopped his own vehicle behind Poeun's. Moore ordered Poeun to approach him, and Poeun complied.

Poeun was dressed in civilian clothing and was not in possession of any of his department-issued equipment.  Nonetheless, Moore knew that Poeun was an employee of County and Department. Poeun knew Moore was his commanding officer and the representative of his employers, the County of San Joaquin ("County"), and the San Joaquin County Sheriff's Office ("Department").

Moore ordered Poeun to produce his driver's license and told Poeun that he would be cited for speeding and running a stop sign. Poeun told Moore that he did not have his driver's license.  Moore

---

[1] These facts are taken from the allegations in the Plaintiffs' Second Amended Complaint, ECF No. 19, at 4-5, unless otherwise specified.  The allegations are taken as true for purposes of this motion only.  See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

1   ordered Poeun to surrender his car keys and to report to Moore's
2   office at 9:00 A.M. the same day.  Moore gave Poeun no reason for
3   depriving him of his car keys.

4       Peoun did not tell Moore that he had violated any laws, Poeun
5   did not believe that he had violated any laws, and Moore did not
6   tell Poeun when or where he had observed Poeun speeding or running
7   a stop sign.

8       Poeun reported to Moore's office as ordered.  At that time,
9   Moore advised Poeun that he had observed Poeun speeding and running
10  a stop sign, but did not tell him when or where he made those
11  observations.  Moore interrogated Poeun about the Vehicle Code
12  violations, but did not advise Poeun that he was under
13  investigation, did not advise him of his rights under the Act, and
14  did not give him any admonishment pursuant to <u>Lybarger v. City of
15  Los Angeles</u>, 40 Cal.3d 822 (1985).

16  Moore ordered Poeun to issue himself a traffic citation
17  admitting to violations of the California Vehicle Code.  Poeun
18  complied with his superior's order by issuing himself a citation
19  for violations of California Vehicle Code sections 22450(a),
20  failure to stop at a stop sign; 22350, basic speed law; and
21  12951(a), driver's license not in possession, with a date to appear
22  in San Joaquin County Superior Court.

23      Moore returned Poeun's car keys to him during the 9:00 A.M.
24  meeting, after depriving Poeun of his keys for approximately three
25  (3) hours.

26      As ordered, Poeun provided the citation to the Sheriff's

1   Office the same day.  Poeun alleges that he was not charged with

2   any crime as a result of the citation.[2]

3       Plaintiffs assert causes of action pursuant to 42 U.S.C. §

4   1983, for violation of Plaintiffs' Fourth Amendment right to be

5   free from unreasonable search and seizure and Plaintiffs'

6   Fourteenth Amendment right to procedural due process.  Plaintiffs

7   also assert violations of California Government Code §§

8   3303(b),(c), (g), (i), and 3500, et seq.  Plaintiffs seek

9   injunctive relief, attorney fees, and damages.

10  **B. Procedural Background**

11      On September 24, 2012, this court granted, in part, and

12  denied, in part, Defendants' motion to dismiss Plaintiffs'

13  complaint. Order, ECF No. 18.  It nonetheless urged plaintiffs to

14  consider the propriety of this suit.  Nonetheless, on October 24,

15  2012, Plaintiffs filed their second amended complaint, which is

16  currently at issue.  Pls' Second Am. Compl., ECF No. 19.

17  **C. Defendants' Motion to Dismiss**

18      On November 7, 2012, Defendants filed the instant motion to

19  dismiss.  Defs' Mot., ECF No. 23.  Defendants argue, <u>inter</u> <u>alia</u>,

20  that: (1) Poeun's first claim for violation of his Fourth Amendment

21  rights fails because Moore had probable cause to stop Poeun for

22  multiple violations of the vehicle code, and to temporarily retain

23  Poeun's car keys; (2) Poeun's second claim for violation of his

24  _____

25      [2] That "fact" is taken from plaintiffs' complaint.  What it
    means is in doubt, as it may mean that the citation was from
    infractions or that the citation was withdrawn, dismissed or

26  otherwise disposed of.

1  Fourteenth Amendment right to procedural due process fails because

2  a pre-deprivation notice and hearing are not required prior to

3  detentions and confiscation of property incident to a traffic stop;

4  (3) Moore is entitled to qualified immunity as to all alleged

5  violations of 42 U.S.C. § 1983 claims; (4) Poeun's third through

6  sixth claims under California Government Code § 3303 fail because

7  no punitive action was threatened or taken against Poeun and labor

8  relations were not implicated by the pleaded facts; (5) Poeun's

9  seventh and eighth claims fail because there is no employment

10  relations issue in this case; (6) the San Joaquin Deputy Sheriff's

11  Association does not have standing to bring suit because the

12  interests it seeks to protect are not germane to its purpose; and

13  (7) permanent injunctive relief would not be appropriate under

14  these circumstances.  Defs' Mot., ECF No. 23, Att. 1, at 8-21.

15              **II. STANDARD FOR A MOTION TO DISMISS**

16      A Federal Rule of Civil Procedure 12(b)(6) motion challenges

17  a complaint's compliance with the pleading requirements provided

18  by the Federal Rules.   Under Federal Rule of Civil Procedure

19  8(a)(2), a pleading must contain a "short and plain statement of

20  the claim showing that the pleader is entitled to relief."   The

21  complaint must give defendant "fair notice of what the claim is and

22  the grounds upon which it rests."  Bell Atlantic v. Twombly, 550

23  U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal

24  quotation and modification omitted).

25      To meet this requirement, the complaint must be supported by

26  factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct.

1937, 1950, 173 L.Ed.2d 868 (2009).  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  Id. at 1949-50.  Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."  Id.; Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[3]

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations.  Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 557).  A complaint may fail to show a right to relief either by lacking a

_____

[3] The court also may consider certain limited evidence on a motion to dismiss.  As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence.  See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

Below the court undertakes the laborious, but apparently unjustified expenditure of its resources, to determine whether plaintiffs have stated any viable cause of action.

**III. ANALYSIS**

**A.  Fourth Amendment Claim**

At issue is whether the following incidents, as alleged in Plaintiffs' Second Amended Complaint, violated Poeun's Fourth Amendment right to be free of unreasonable searches and seizures: (1) Moore's stop of Poeun; and (2) Moore's deprivation of Poeun's car keys.

**i.  Moore's Stop of Poeun**

An investigatory stop (temporary detention) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures if the investigatory stop is lawful. <u>Arizona v. Johnson</u>, 555 U.S. 323, 326, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009) (discussing <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In a traffic-stop setting, an investigatory stop is lawful "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." <u>Id.</u> at 327.

To initiate an investigatory stop of a motorist, there must "at least exist reasonable suspicion that the motorist is engaging in illegal activity." <u>Liberal v. Estrada</u>, 632 F.3d 1064, 1077 (9th

Cir. 2011).  To form a reasonable suspicion, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained engaged in criminal activity."  Id. (citing United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000)).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The first issue here presented is whether Poeun, a deputy sheriff, was seized without the existence of probable cause.[4]

[4]  In Aguilera v. Baca, the Ninth Circuit expounded on the "seizure" portion, as opposed to the "probable cause" portion, of this inquiry.  As to the question of whether a subordinate officer was seized, the Ninth Circuit provided, "Since the Fourth Amendment does not protect against the threat of demotions or job loss, the relevant constitutional inquiry is whether a reasonable deputy in the position of the plaintiff[] would have feared detention if he had refused to obey the commands of his superior officers." Aguilera, 510 F.3d at 1161 (citing United States v. Anderson, 663 F.2d 934, 939 (9th Cir. 1981)).  In this inquiry, the court must "distinguish between a department's actions in its capacity as an employer and its actions as the law enforcement arm of the state." Id. (citing Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Garrity, 385 U.S. at 493, 87 S.Ct. 616).

When considering whether subordinate officers were seized without the existence of probable cause, this circuit considers the following factors: the experience level of the subordinate officer; whether the treatment was consistent with that allowed by department guidelines or general policy; the occurrence of physical contact or threats of physical restraint; explicit refusal of permission to depart; isolation of the subordinate officer; permission to use the restroom without accompaniment; the subordinate officer's being informed that he was the subject of a criminal investigation; whether the subordinate officer was spoken to in a menacing or threatening manner; whether the subordinate officer was under constant surveillance; whether superior officers

1    As to whether Moore had probable cause to stop Poeun,
2    Plaintiffs specifically allege that: (1) Moore "told [Poeun] he
3    would be cited for speeding and running a stop sign"; (2) "Poeun
4    did not tell Moore he had violated any laws"; (3) "Poeun did not
5    believe he had violated any laws"; and (4) "Moore did not tell
6    Poeun when or where he had observed Poeun speeding or running a
7    stop sign." Pls' Second Am. Compl., ECF No. 19, at 4.
8    The court's previous order denied Plaintiff's Fourth Amendment
9    cause of action for failing to "allege that Poeun had *not* been
10   speeding and had *not* run a stop sign, or even that Moore lacked a
11   basis for believing that Poeun had been speeding and had run a stop
12   sign." Order, ECF No. 18, at 11. Plaintiffs still, in their
13   Second Amended Complaint, fail to make these necessary allegations
14   to support their Fourth Amendment claim. Plaintiffs merely allege
15   that "Poeun did not believe he had violated any laws."
16   Taking as true all factual allegations and construing them in
17   the light most favorable to Plaintiffs, the court can give full
18   credit to Poeun's *belief* that he had not violated any laws, without
19   Poeun's belief having any impact on the question of whether Moore,
20   in fact, had probable cause to stop Poeun. Put another way, even

21   _____

22   denied a request to contact an attorney or union representative;
23   the subordinate officer's ability to retain law enforcement
     equipment, including weapons and badges; the duration of detention;
     and the subordinate officer's receipt of overtime pay. Aquilera,
24   510 F.3d at 1169 (citing Driebel, 298 F.3d at 622-49).
25   Again, in this case, Defendants do not dispute that a seizure
     occurred, but instead, argue that the facts alleged in Plaintiffs'
26   Second Amended Complaint show that Moore had probable cause to stop
     Poeun.

crediting Plaintiffs' assertions, Poeun still could have either been speeding and run a stop sign unknowingly, or Moore could have had an basis for believing that Poeun had committed those vehicular violations.   That is, Plaintiffs continue to fail to make sufficient factual allegations to indicate that Moore lacked probable cause to stop Poeun.

Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim based on the stop of Poeun is granted.   Given the previous history, it is granted without leave to amend.

**ii. Moore's Deprivation of Poeun's Car Keys**

A seizure within the meaning of the Fourth Amendment results if "there is some meaningful interference with an individual's possessory interests in that property."   <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 862 (9th Cir. 2005) (citing <u>Soldal v. Cook County</u>, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)). The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy.   <u>Id.</u> (citing <u>Soldal</u>, 506 U.S. at 62-64).

"A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well delineated exceptions.   The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement."   <u>United States v. Hawkins</u>, 249 F.3d 867, 872 (9th Cir. 2001) (citing <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)).

1       In this court's order addressing Defendants' motion to dismiss

2   Plaintiffs' original complaint, the court interpreted Defendants'

3   motion as arguing that Moore's seizure of Poeun's car keys falls

4   within the "community caretaking" exception to the warrant

5   requirement. <u>See</u> Order, ECF No. 18, at 12.   In the instant motion,

6   Defendants have adopted that analysis and argue that, pursuant to

7   his "community caretaking" function as a police officer, Moore

8   "impounded Poeun's vehicle by retaining Poeun's car keys for

9   approximately three hours" because Poeun was unlawfully "operating

10  a vehicle without his drivers' license."   Defs' Mot., ECF No. 23,

11  at 11.

12      An impoundment may be proper under the community caretaking

13  doctrine if the driver's violation of a vehicle regulation prevents

14  the driver from lawfully operating the vehicle. <u>Miranda</u>, 429 F.3d

15  at 865 (citing <u>United States v. Gutierrez</u>, 995 F.2d 169, 171 (9th

16  Cir. 1993)).   The violation of a traffic regulation justifies

17  impoundment of a vehicle if the driver is unable to remove the

18  vehicle from a public location without continuing its illegal

19  operation. <u>Id.</u>  The decision to impound a vehicle after the driver

20  has violated a vehicle regulation must consider the location of the

21  vehicle, and whether the vehicle was actually "impeding traffic or

22  threatening public safety and convenience" on the streets, such

23  that impoundment was warranted.   <u>Id.</u> (citing <u>South Dakota v.</u>

24  <u>Opperman</u>, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000, n.5

25  (1976)).   An officer cannot reasonably order an impoundment in

26  situations where the location of the vehicle does not create any

1  need for the police to protect the vehicle or to avoid a hazard to

2  other drivers.  Id. at 866 (citing United States v. Squires, 456

3  F.2d 967, 970 (2d Cir. 1972)).

4      Here, Plaintiffs allege that Poeun had "parked his car in a

5  marked parking stall available to the general public."  Crediting

6  Plaintiffs allegation, it is unreasonable to infer that Poeun's

7  car, parked in a marked parking stall, either impeded traffic,

8  threatened public safety and convenience, or presented a hazard to

9  other drivers.  Although some courts have found impoundment to be

10 justified when a car is parked in a parking lot, such impoundment

11 is typically justified by the need to protect the car from damage

12 or theft.  See, e.g., United States v. Jensen, 425 F.3d 698, 706

13 (9th Cir. 2005), cert. den., 547 U.S. 1056, 126 S.Ct. 1664, 164

14 L.Ed.2d 398 (2006); Hallstrom v. City of Garden City, 991 F.2d

15 1473, 1477 n.4 (9 th Cir. 1993), cert. den., 510 U.S. 991, 114

16 S.Ct. 549, 126 L.Ed.2d 450 (1993).  The need to protect the car

17 from damage or theft does not appear to be at issue here.

18     Nevertheless, Plaintiffs' allegation that Poeun had been

19 driving without his driver's license indicates both that Poeun had

20 been unable to lawfully operate his vehicle at the time of the

21 impoundment, and that he was unable to remove the vehicle from its

22 public location without continuing its illegal operation.   It

23 appears reasonable to the court that Moore confiscated Poeun's keys

24 due to Poeun's failure to carry his driver's license, and then, for

25 any number of possible reasons, Moore reconsidered his decision and

26 returned those keys shortly thereafter.  Although Moore's actions

might display less consistency than was appropriate, the court finds that the taking of the car keys itself was justified by the community caretaking exception.

Thus, the court finds that the impoundment was justified by the community caretaking exception to the warrant requirement and therefore did not violate the Fourth Amendment.

Defendants' motion to dismiss this aspect of Plaintiffs' Fourth Amendment claim is granted, without leave to amend.

**B.   Fourteenth Amendment Procedural Due Process Claim**

Plaintiffs' allege that "Defendants' actions in depriving Poeun of the keys to his car for a three-hour period without justification violated Poeun's property and liberty interests in access to his personal automobile and his right to freedom of movement." Pls' Second Am. Compl., ECF No. 19, at 6.[5]

Defendants argue that given the facts as alleged in Poeun's complaint, a pre-deprivation notice and a hearing were not required before the temporary confiscation of the car keys, and thus, Plaintiffs fail to sufficiently allege a violation of Poeun's procedural due process rights under the Fourteenth Amendment.

To succeed on a procedural due process claim, a plaintiff must demonstrate: (1) that he had a constitutionally protected liberty or property interest; (2) the deprivation of that interest by the government; and (3) a lack of adequate process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

---

[5] Setting aside the court's finding of justification which disposes of the issue, I explore the issue in detail.

1    Courts assess due process case-by-case based on the total

2   circumstances. <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 866

3   (9th Cir. 2005) (citing <u>California ex rel. Lockyer v. F.E.R.C.</u>, 329

4   F.3d 700, 711 (9th Cir. 2003)). Constitutional due process

5   requires that a party affected by government action be given the

6   opportunity to be heard at a meaningful time and in a meaningful

7   manner. <u>Id.</u> (citing <u>California ex. rel. Lockyer</u>, *supra*, at 708,

8   n.6). In determining what process is due, courts consider the

9   factors specified by the Supreme Court in <u>Matthews v. Eldridge</u>:

10          First, the private interest that will be affected
            by the official action; second, the risk of an
11          erroneous deprivation of such interest through the
            procedures used, and the probable value, if any, of
12          additional or substitute procedural safeguards; and
            finally, the Government's interest, including the
13          function involved and the fiscal and administrative
            burdens that the additional or substitute
14          procedural requirement would entail.

15   424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

16          In <u>Miranda v. City of Cornelius</u>, the Ninth Circuit held that

17   when the police are clearly acting within their legitimate

18   caretaking functions, procedural due process does not require pre-

19   deprivation notice and a hearing before impoundments. 429 F.3d at

20   867. The court further provided that "[i]mpoundment of a vehicle

21   . . . for which there is no licensed driver, although those

22   circumstances are not presented here, presumably would not require

23   pre-deprivation notice and a pre-seizure hearing because the burden

24   of such procedures would vitiate the legitimate purposes of the

25   impoundment." <u>Id.</u> The court in <u>Miranda</u> ultimately remanded the

26   case to the district court and determined that, where the

14

1   impoundment occurred when the vehicle was safe and secure in the
2   driveway of the owners' home, and thus, the legitimacy of the
3   caretaking purpose for the impoundment was questionable, the
4   district court should determine "whether any legitimate caretaking
5   purpose offered by Defendants outweighed the affected private
6   interest of the [Plaintiffs] in uninterrupted possession of their
7   car and the risk of erroneous deprivation." Id. at 867-68.

8        The court has determined that Moore was acting within his
9   legitimate caretaking function when he deprived Poeun of the car
10  keys for three hours.  Thus, procedural due process did not require
11  pre-deprivation notice and a hearing before the impoundment at
12  issue in this case.

13       Even if Moore's actions were not "clearly . . . within" the
14  police department's legitimate caretaking functions, and thus, the
15  legitimacy of the caretaking purpose for the impoundment was
16  questionable, giving particular weight to the Ninth Circuit's
17  reasoning in Miranda as to a vehicle with no licensed driver, this
18  court would determine that Moore's purported interest in impounding
19  Poeun's car based on Poeun's lack of a driver's license would
20  outweigh Poeun's interest in the uninterrupted possession of his
21  car keys and the use of his vehicle while he remained unlicensed.

22       For these reasons, Defendants failure to provide procedural
23  safeguards in this case did not constitute a violation of
24  Plaintiffs' right to procedural due process under the Fourteenth
25  Amendment.

26       Defendants' motion to dismiss Plaintiffs' procedural due

1  process claim under the Fourteenth Amendment is granted, without

2  leave to amend.

3  **C.  Qualified Immunity**

4      Defendants argue that Moore is entitled to qualified immunity

5  on all of Poeun's causes of action for alleged violations of 42

6  U.S.C. § 1983.

7      The doctrine of qualified immunity "protects government

8  officials from 'liability for civil damages insofar as their

9  conduct does not violate clearly established statutory or

10 constitutional rights of which a reasonable person would have

11 known.'" Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009)

12 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,

13 73 L.Ed.2d 396 (1982)).   In Saucier v. Katz, 533 U.S. 194, 121

14 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established

15 the following two-pronged inquiry for determining whether qualified

16 immunity applies in a given situation: (1) whether the facts that

17 a plaintiff has alleged or shown make out a violation of a

18 constitutional right; and (2) whether the right at issue was

19 "clearly established" at the time of the defendant's alleged

20 misconduct.   Id. at 201 (citations omitted).[6]  Qualified immunity

21 is applicable unless the official's conduct violated a clearly

22 established constitutional right.  Pearson v. Callahan, 555 U.S.

23 _____

24      [6] The court in Saucier established these considerations as a
   strict two-step process through which lower courts should move
25 sequentially.  533 U.S. at 200-01.  In Pearson v. Callahan, 555
   U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), however, the
   Court held that lower courts have discretion to decide which of the
26 two prongs to consider first.

223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  A right is
clearly established only if "it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202, 121 S.Ct. 2151,
150 L.Ed.2d 272 (2001).

If the court determines, however, that no constitutional
violation occurred, the qualified immunity inquiry is at an end.
<u>Aquilera v. Baca</u>, 510 F.3d 1161, 1167 (9th Cir. 2007).

This court determined that, based on Plaintiffs' factual
allegations, neither Plaintiffs' Fourth Amendment rights, nor their
Fourteenth Amendment procedural due process rights were violated.
Thus, Defendants are entitled to qualified immunity as to
Plaintiffs' claims under the Fourth and Fourteenth Amendments.

**D.  Cal. Govt. Code § 3303 Claims**

Defendants argue that "[b]ecause Poeun fails to allege any
facts that show Moore's questioning of Poeun involved more than
Poeun's alleged traffic infractions, and no administrative or
disciplinary action that could have led to punitive action was
taken against Poeun by [Defendant] County, his claims under
Government Code § 3303 fail as a matter of law."

The Public Safety Officers Procedural Bill of Rights Act
("POBRA") is located at California Government Code §§ 3300, et
seq., and sets forth a list of rights and protections which must
be afforded to all peace officers by the agencies that employ them.
<u>Baggett v. Gates</u>, 32 Cal.3d 128, 135 (Cal. 1982).  The various
procedural protections of POBRA have been said to "balance the

public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment." Jackson v. City of Los Angeles, 111 Cal.App. 4th 899, 909 (Cal. 2003).

Section 3303 of POBRA provides: "When any public safety officer is under investigation and subjected to interrogation by his or her commanding officer . . . that could lead to punitive action, the interrogation shall be conducted under the following conditions. . . ." Cal. Govt. Code § 3303. "Punitive action" is defined in section 3303 as "any action that *may* lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." Id. (emphasis added).

California courts interpreting the "punitive action" definition of section 3303 have determined that POBRA "does not require a showing that an adverse employment consequence has occurred or is likely to occur." Paterson v. City of Los Angeles, 174 Cal.App.4th 1393, 1400, 95 Cal.Rptr.3d 333, 338–39 (Cal.App. 2 Dist., 2009) (citing Otto v. Los Angeles Unified School Dist., 89 Cal.App.4th 985, 997, 107 Cal.Rptr.2d 664 (Cal.Ct.App. 2001)). Rather, "punitive action . . . may exist when action is taken which may lead to the adverse consequences . . . at some future time." Id. (citing Otto, 89 Cal.App.4th at 996, 107 Cal.Rptr.2d 664).

As a caveat, however, section 3303 also provides: "This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned

18

contact with, a supervisor or any other public safety officer, *nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities*."   Cal. Govt. Code § 3303(i) (emphasis added).

As was the case in Plaintiffs' original complaint, Plaintiffs' Second Amended Complaint does not present any facts to indicate that Moore's questioning of Poeun concerned anything other than alleged vehicular violations.   Instead, any questioning of Peoun by Moore, based on the facts alleged, appears to have been "concerned solely and directly with alleged criminal activities." Thus, such interrogation falls within the caveat provided by section 3303(i).   Plaintiffs' Section 3303 claims are, therefore, foreclosed.

Defendants' motion to dismiss Plaintiffs' Section 3303 claims is granted, without leave to amend.

**E.   Cal. Govt. Code § 3500 Claims**

Defendants argue that, because "this is not a labor relations or employment law case," the facts as alleged do not trigger the protections of the Meyers-Milias-Brown Act.   Plaintiffs make no arguments in opposition to Defendants' motion to dismiss their § 3500 claims.

In Plaintiffs' Second Amended Complaint, in support of their § 3500 claims, Plaintiffs assert that Defendants' failed to provide information and grant pre-interview conferences as required by the statute.   Plaintiffs further allege that "[a]t no time did Defendants request to meet and confer with Plaintiff [Deputy

19

1   Sheriffs' Association ("DSA")] before implementing a change to the

2   terms and conditions of DSA-represented employees such that those

3   employees could be subjected to unlawful seizures in violation of

4   the Fourth Amendment, deprivation of car keys without cause or

5   justification, and violation of employee rights under the Act."

6

7        Under the Meyers-Milias-Brown Act ("MMBA"), Cal. Govt. Code

8   § 3500, et seq., a public agency is required to meet and confer in

9   good faith with the representatives of a recognized employee

10  organization (here, the San Joaquin Deputy Sheriffs' Association),

11  before determining a policy or course of action "regarding wages,

12  hours, and other terms and conditions of employment."  Cal. Govt.

13  Code § 3505.

14       In Redwoods Community College Dist. v. Public Employment, 159

15  Cal.App.3d 617, 618, 205 Cal.Rptr. 523 (Cal.Ct.App. 1984), the

16  California Court of Appeal determined that "Under federal and

17  California labor cases an individual employee has a right to be

18  represented by his or her union at certain kinds of interviews with

19  management."  The court further provided that while "[n]o court

20  appears to have set a firm outer limit to this right of

21  representation," "the facts that the employee requested the

22  representation, that the interview was investigatory, and that the

23  employee reasonably believed that the interview might result in

24  disciplinary action against him or her . . . have been deemed

25  significant."  Id. at 618-19.

26       Subsequent to the decision in Redwoods Community College

Dist., the California Court of Appeal for the Fourth District provided, in interpreting the MMBA, that "[a] public agency's action must have a *significant effect* on wages, hours and other terms and conditions of employment before it will be subject to the provisions of the MMBA. <u>Riverside Sherriff's Ass'n v. County of Riverside</u>, 106 Cal.App.4th 1285, 1290, 131 Cal.Rptr.2d 454 (Cal.Ct.App. 2003) (emphasis added).

As this court provided in its previous order dismissing Plaintiffs' § 3500 claims, the court "finds it reasonable to infer that Poeun reasonably believed that the interview might result in disciplinary action because Poeun was, as alleged, ordered to issue himself a citation.  It is also reasonable to infer Moore's questioning of Peoun, both outside the Sheriff's Office, and later in Moore's office, was 'investigatory' because any questioning concerned the alleged vehicular violations."  Order, ECF No. 18, at 22-23.

However, as was the case in Plaintiffs' original complaint, Plaintiffs' Second Amended Complaint fails to allege any effect that Moore's actions had on Poeun's wages, hours, or other terms and conditions of employment.  Plaintiffs also again fail to allege whether Poeun requested representation.

Thus, again giving greater weight to the considerations set forth in the more recent California Court of Appeal decision, <u>Riverside Sherriff's Ass'n v. County of Riverside</u>, the court finds that Plaintiffs' Cal. Govt. Code § 3500 claim is insufficiently pled in Plaintiffs' Second Amended Complaint.

1   Defendants' motion to dismiss Plaintiff's § 3500 claim is

2   therefore granted, without leave to amend.

3   **F.   Injunctive Relief**

4       Defendant argues that: (1) the San Joaquin County Deputy

5   Sheriff's Association lacks standing to seek injunctive relief

6   pursuant to California Government Code § 3309.5(d)(1); and (2)

7   injunctive relief is not appropriate.

8       Plaintiffs bring their claim for injunctive relief pursuant

9   to California Government Code § 3309.5(d)(1) (POBRA), which

10  provides that:

> In any case where the superior court finds that a
> public safety department has violated any of the
> provisions of this chapter, the court shall render
> appropriate injunctive or other extraordinary
> relief to remedy the violation and to prevent
> future violations of a like or similar nature,
> including, but not limited to, the granting of a
> temporary restraining order, preliminary
> injunction, or a permanent injunction prohibiting
> the public safety department from taking any
> punitive action against the public safety officer.

17  Cal. Govt. Code § 3309.5(d)(1) (West 2006).  Because the court has

18  determined that Plaintiffs have failed to sufficiently plead claims

19  under POBRA, Plaintiffs' right to seek injunctive relief under §

20  3309.5 is foreclosed.

21      Defendants' motion to dismiss Plaintiffs' claim for injunctive

22  relief is granted, without leave to amend.

23                         **IV. CONCLUSION**

24      For the foregoing reasons, Defendants' motion to dismiss, ECF

25  No. 23, is GRANTED, without leave to amend.

26      Because there are no remaining causes of action, this action

22

is DISMISSED.   The Clerk of the Court is directed to close the case.

        IT IS SO ORDERED.

        DATED:   January 10, 2013.


                                        _____
                                        LAWRENCE K. KARLTON
                                        SENIOR JUDGE
                                        UNITED STATES DISTRICT COURT